# EXHIBIT A-13

## IN THE SUPERIOR COURT OF HART COUNTY
### STATE OF GEORGIA

|  |  |  |
|---|---|---|
| SHERRY H. CRAFT, Individually, and<br>    As Class representative for<br>    All others similarly situated, | )<br>)<br>)<br>) |  |
|     Plaintiff, | )<br>) | **CIVIL ACTION NO.:** |
| v. | )<br>)<br>) | _____ 07HV4503 _____ |
| NORTH SEATTLE COMMUNITY<br>COLLEGE FOUNDATION, d/b/a<br>    AMERICAN FINANCIAL<br>    SOLUTIONS,<br>AMERIX CORPORATION,<br>DOE CORPORATIONS 1 -8, and<br>JOHN DOES 1-15,<br>Whose real and proper<br>Identities Are Unknown at present | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **JURY TRIAL DEMANDED** |
|     Defendants. | )<br>) |  |

### SECOND AMENDED COMPLAINT IN CLASS ACTION

COMES NOW, Sherry H. Craft, individually and as class representative for all others similarly situated, and files this Second Amended Complaint against NORTH SEATTLE COMMUNITY COLLEGE FOUNDATION d/b/a AMERICAN FINANCIAL SOLUTIONS, AMERIX CORPORATION, DOE CORPORATIONS 1 through 8, JOHN DOES 1 through 15,whose real and proper identities are unknown at present, and shows this Honorable Court the following:

On September 18, 2007, this Honorable Court granted Plaintiff's Motion to Add NORTH SEATTLE COMMUNITY COLLEGE FOUNDATION d/b/a AMERICAN FINANCIAL SOLUTIONS ("AFS") and AMERIX CORPORATION ("Amerix") as Parties to this litigation. Subsequent to the entry of this Court's Order adding the

aforementioned parties, the Court granted the previous defendant's, GENUS CREDIT MANAGEMENT CORPORATION ("Genus"), motion for summary judgment. Therefore, Plaintiff files this, her Second Amended Complaint in Class Action to reflect the proper defendants in this Action.

<u>**Jurisdiction and Venue**</u>

1.

Plaintiff is a domiciliary of the State of Georgia.

2.

Plaintiff resides in Hart County, Georgia.

3.

Defendant North Seattle Community College Foundation d/b/a American Financial Solutions, (hereinafter "AFS") is a foreign corporation, incorporated in the State of Washington, doing business in Georgia.

4.

AFS has not registered with the Georgia Secretary of State and is not authorized for conduct business in this State.

5.

AFS has not registered with the Governor's Office of Consumer Affairs as required by OCGA § 18-5-3.1.

6.

AFS lists its registered agent as Phyllis Mayo and maintains its registered office at 9600 College Way North, Seattle, Washington 98103.   AFS may be served with Summons and process at this address.

7.

Defendant Amerix Corporation (hereinafter "Amerix") is a foreign for-profit corporation, incorporated in the State of Maryland, doing business in Georgia.

8.

Amerix has not registered with the Georgia Secretary of State and is not authorized for conduct business in this State.

9.

Amerix has not registered with the Governor's Office of Consumer Affairs as required by OCGA § 18-5-3.1.

10.

Amerix lists its registered agent as Robert A. Miller and maintains its registered office at 8930 Stanford Boulevard, Columbia, Maryland 21202. Amerix may be served with Summons and process at this address.

11.

Defendants Doe Corporations 1 – 8 are corporations whose domiciles and principal places of business are unknown and were, at all times material hereto, regularly conducting business in the State of Georgia. All are subject to the jurisdiction of this Court, and are joined as unnamed parties pursuant to OCGA § 9-11-10(a).

12.

Defendants Does 1 – 15 are individuals whose residences are unknown and were, at all times material hereto, principals, employees or agents of either Defendant AFS, Defendant Amerix, and/or Doe Corporations 1-8 and were acting in the course and scope of their employment with their respective defendant employer and the acts of said individuals are accordingly imputed to their respective defendant employer. All are

subject to the jurisdiction of this Court, and are joined as unnamed parties pursuant to
OCGA § 9-11-10(a).

13.

All of the Defendants in this Action are subject to the jurisdiction of this Court
pursuant to the Georgia Long Arm Statute, OCGA § 9-10-91, as Defendants transact
business within the state, have committed a tortious act or omission within this state,
and/or have committed a tortious injury in this state caused by an act or omission
outside this state.

14.

Defendants regularly do and solicit business, and engage in any other persistent
course of conduct, and derive substantial revenue from services rendered in this state.

15.

The events giving rise to this Complaint occurred in Plaintiff's resident county of
Hart, and thus venue is proper in this Court pursuant to the venue provisions of the
Georgia Long Arm Statute, OCGA § 9-10-93.

16.

Venue is proper as to Doe Corporations 1-8 and John Does 1-15 pursuant to
OCGA § 9-10-31.

## **FACTS**

17.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as
if fully restated herein and further state as follows:

18.

Defendants are a collection of interrelated companies and individuals that collectively comprise one of the largest providers, solicitors, and administrators of Debt Management Plans ("DMPs") sold to financially-troubled consumers or companies and individuals that profit from the DMPs marketed by other Defendants.

19.

All Defendants acted jointly and severally and provided assistance to one another in committing violations of Georgia's Debt Adjusting Act, OCGA §§ 18-5-1 *et seq.* as alleged herein.

20.

Prior to July 1, 2003, Plaintiff had undergone some financial difficulties due to health problems and other life events.

21.

As a result of the significant changes in her financial condition, Plaintiff began to amass debt in the form of unsecured "credit-card" debt.

22.

Due to the interest rates charged by the credit card companies, Plaintiff's significant change in economic circumstances, and the large amount owed, Plaintiff began to have significant difficulty meeting her monthly financial obligations.

23.

Sometime in 1998 or 1999, Defendant AFS entered into the credit counseling and debt adjusting industry. AFS promotes itself through its advertising in print, via the internet, and through the broadcast media as a company that can assist consumers in a heavy debt situation by helping them consolidate their credit card bills into one

payment, lowering overall interest rates, re-aging accounts and eliminating late and over-the-limit fees.

24.

As one of its major services, Defendant AFS offers to enter its customers into Debt Management Plans (hereinafter "DMP"). Ostensibly, the DMP is designed to assist debtors in rectifying their financial problems by negotiating the lowest possible monthly payment amount with each of the debtor's creditors and by having the debtors make one consolidated monthly payment to AFS, who, in turn, would distribute those funds to the debtor's creditors.

25.

In an effort to expand its market share in the debt adjusting business arena, Defendant AFS purchased substantially the entire portfolio of Debt Management Plans from one of its competitors, Genus Credit Management Corporation ("Genus") in June 2001.

26.

As a result of the purchase of the Genus DMP portfolio, AFS acquired Plaintiff's DMP.

27.

Defendant Amerix is the service organization retained by Defendant AFS to service Plaintiff's DMP.

28.

Upon information and belief, pursuant to Plaintiff's "Contract for Services" now held by Defendant AFS, Plaintiff made the following payments on approximately the 3rd of each month to AFS and/or Amerix (hereinafter collectively "Defendants"): $100.00

from June 2001 through April 2002; $125.00 from May 2002 through July 2002; $202.00 from August 2002 through June 2003; $270.72 July 2003; $211.00 from August 2003 through March 2004; $217.71 April 2004 and $241.00 May 2004 through November 2004.

29.

From the aforementioned payments, Defendants accepted a fee, charge, or contribution from Plaintiff each month.

30.

The fees collected from Plaintiff were deducted from the monthly payments made by Plaintiff each month in the amounts as follows:  $12.00 from June 2001 through April 2002 and $16.00 from May 2002 until November 2004.

31.

As a result of Plaintiff participating in the DMP, Defendants began to receive funds directly from Plaintiff's creditors, (and the creditors of all others similarly situated,) in an unknown amount each month, referred to in the credit industry as "fair share contributions." The amount of "fair share contribution" paid by creditors to Defendants is based upon amounts collected through the DMP. The "fair share contribution" is, in reality, a payment by the creditor to Defendants for their collection efforts.  Defendants masquerade the credit collection payments as "contributions" relevant to the non-profit status of AFS.

32.

Defendants received "fair share contributions" directly from Plaintiff's creditors as a result of Plaintiff's continued participation in the DMP plan.

## Georgia's Debt Adjusting Act

33.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further states as follows:

34.

The Georgia Debt Adjusting Act, OCGA § 18-5-1, defines debt adjusting as:

> [D]oing business in debt adjustments, budget counseling, debt management, or debt pooling service or holding oneself out, by words of similar import, as providing services to debtors in the management of their debts and contracting with a debtor for a fee to:
>
> (A) Effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor;
>
> (B) Receive from the debtor and disperse to his or her creditors any money or other thing of value.

35.

From its initial creation by the Georgia General Assembly in 1956 until its amendment of July 1, 2003, the Georgia Debt Adjusting Act stated that "*[i]t shall be unlawful* for any person to engage in the business of debt adjusting" and that "[a]ny person who engages in the business of debt adjusting . . . shall be guilty of a misdemeanor." OCGA § 18-5-2 (1956) (emphasis added).

36.

Effective July 1, 2003, OCGA § 18-5-2 was amended and states:

> In the course of engaging in debt adjusting, it shall be unlawful for any person to accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor . . .

37.

Additionally, OCGA § 18-5-4 was amended, effective July 1, 2003, and states:

> Any person who engages in debt adjusting in violation of the provisions of [OCGA § 18-5-2 or § 18-5-3.2(a)] shall further be liable to the debtor in an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00. Such debtor shall have the right to bring a cause of action directly against such person for violation of the provisions of this chapter.

38.

Further, the enabling clause of House Bill 385 (2003) states the purpose of the amendment is as follows:

> To amend Chapter 5 of Title 18 of the Official Code of Georgia Annotated, relating to debt adjustment, so as to limit the maximum charge that may be imposed for the provision of debt adjustment services.

39.

AFS advertises and promotes itself in print, *via* the internet, and through the broadcast media that it provides debt adjusting services and debt management plans, can reduce or eliminate interest rates, eliminate late charges and over-the-limit fees, eliminate or reduce debt principle, assist in avoiding bankruptcy and stop creditor harassment. AFS states on its website that it "is one of the largest non-profit Credit Counseling Agencies in the nation. We offer confidential professional budget counseling, financial education and debt management assistance nationwide." <http://www.myafs.org>, last visited September 27, 2007.

40.

The "Contract for Services" between AFS and Plaintiff provides that AFS will provide debt adjusting services for a fee.

41.

AFS had entered into similar Agreements with others similarly situated to Plaintiff (hereinafter "Class Members") to provide debt adjusting services for a fee.

42.

Defendants received the aforesaid funds from Plaintiff and Class Members at the time said Agreement was entered into, in direct violation of the Georgia Debt Adjusting Act.

43.

After July 1, 2003, Defendants accepted funds from Plaintiff as charges, fees, contributions or combination thereof in an amount in excess of 7.5 percent of the total paid monthly by Plaintiff to Defendants for distribution to Plaintiff's creditors.

44.

After July 1, 2003, Defendants accepted funds from others similarly situated to Plaintiff as charges, fees, contributions or combination thereof in an amount in excess of 7.5 percent of the total paid monthly by Class Members to Defendants for distribution to their creditors.

45.

Defendants continued to receive the aforesaid funds from Plaintiff in direct violation of the Georgia Debt Adjusting Act until Plaintiff terminated her relationship with Defendants in December of 2004.

46.

Defendants received like funds and continue to receive like funds from other Georgia residents similarly situated to Plaintiff.

## Violations of the Debt Adjusting Act

47.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further states as follows:

48.

The Debt Adjusting Act, OCGA 18-5-2 (2007), as amended states:

> "In the course of engaging in debt adjusting, it shall be unlawful for any person to accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor;"

49.

The amended Debt Adjusting Act declared that anyone that violates the provisions of OCGA § 18-5-2 "shall further be liable to the debtor in an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00." OCGA § 18-5-4 (2007).

50.

The aforementioned fees collected monthly by Defendants from Plaintiff represented the following percentages of the amount collected for distribution to creditors (calculated by taking the total monthly payment minus the amount of the monthly fee, then dividing the monthly fee by that result): 13.64% from June 2001 through April 2002, 14.68% from May 2002 through July 2002; 8.6% from August 2002 through June 2003; 8.21% from August 2003 through March 2004 and 7.93% in April 2004.

51.

The monthly fee charged by Defendants to Plaintiff and others similarly situated exceeds the statutorily allowed percentage of 7.5% as stated in OCGA § 18-5-2.

52.

Defendants have violated the Debt Adjusting Act in the same manner with all other Georgia residents that have done business with Defendants since July 1, 2003.

53.

*Class Plaintiffs are defined as follows:* All Georgia residents from whom Defendants accepted charges, fees contributions and or combinations thereof on or after July 1, 2003 in an amount in excess of 7.5 percent of the amount paid monthly by the individual Class Plaintiffs to Defendants for distribution to Plaintiffs' individual creditors.

54.

The Georgia residents defined as the Class Plaintiffs are so numerous that joinder is impracticable.

55.

The claims being made by Plaintiff are typical of the claims of the entire class of Georgia residents defined as Class Plaintiffs and present similar issues of law and fact.

56.

Plaintiff, individually and as class representative of all others similarly situated, seeks as damages an amount equal to the total of all fees, charges, contributions or combination thereof paid by Plaintiff and the Class Plaintiffs and all other sums as allowed under OCGA §§ 18-5-1, *et seq.*

## "Fair Share Contributions"

57.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further states as follows:

58.

Defendants received collection fees from various creditors for Defendants' collection efforts on behalf of the various creditors. The credit industry refers to these collection fees as "fair share contributions."

59.

While illegally engaging in the business of debt adjusting in direct violation of OCGA §§ 18-5-1 *et seq.*, Defendants unjustly enriched themselves by unlawfully receiving these so-called "fair share contributions" from Plaintiff's creditors. Defendants used Plaintiff's payments to receive debt-collection payments from Plaintiff's creditors for Defendants' profit and gain.

60.

Defendants have unjustly and illegally enriched themselves by receiving these collection fees masqueraded as "fair share contributions" in the same manner with all Georgia residents defined as the Class Plaintiffs that have done business with Defendants since the amendment of the Georgia Debt Adjusting Act on July 1, 2003.

61.

Plaintiff, individually and as class representatives for the Class members, seeks disgorgement from Defendants the amounts unjustly gained by Defendants through these so-called "fair share contributions" and, any amounts awarded by this Court in this cause for Defendants' unjust gain.

**WHEREFORE**, Plaintiff being entitled to a trial by jury and judgment against the Defendants, prays for the following:

a) That Plaintiff be designated class representative for the Class Plaintiffs;

b) That Plaintiff's counsel be designated class counsel for the Class Plaintiffs;

c) That the Class be certified for all Georgia residents from whom Defendants accepted charges, fees and contributions on or after July 1, 2003 in an amount in excess of 7.5 percent of the amount paid monthly by the individual Class Plaintiffs to Defendants for distribution to Plaintiffs' individual creditors;

d) That the Court hold a hearing as soon as practicable for the issuance of a discovery order allowing class certification discovery pursuant to OCGA § 9-11-23(f) (2007);

e) That for each violation of OCGA § 18-5-2 by Defendants, that Plaintiff, individually and as class representative for the Class Plaintiffs, be awarded an amount equal to all charges, fees, and contributions paid to Defendants and all other sums as allowed under OCGA §§ 18-5-1, *et seq.;*

f) That Defendants be required to pay all monies herein referred to in subparagraph e) into a common fund for the benefit of the Class Plaintiffs, less expenses and attorneys' fees;

g) That Defendants be ordered to disgorge all monies received by Defendants as "fair share contributions" and pay said sums into the Court;

h) That Defendants be required to pay all monies herein referred to as "fair share contributions" into a common fund and returned to the Class members' creditors for the benefit of the individual Class debtors, less expenses and attorneys' fees;

i) Or, alternatively to subparagraph h), said funds be retained by the Court and distributed to charities or other institutions in the Court's discretion, less expenses and attorneys' fees;

j) That the Court conduct a "fairness hearing," after due and proper notice to all Class Plaintiffs, and make such award of attorneys' fees and expenses as the Court deems appropriate from the common funds (as above referred to), from Defendants, and/or from the individual awards to each Class member;

k) That Plaintiff be awarded an incentive award from Defendants for the benefit Plaintiff has conferred on the Class members through her commitment of time and expense in conducting this lawsuit;

l) That Plaintiff be granted interest on any award from the time of the filing of this Complaint until the time of such Judgment is entered; and

m) That Plaintiff, individually and as class representatives of all others similarly situated as Class Plaintiff, have such other, equitable and further relief as this Court deems proper.

Respectfully submitted, this _17th_ day of _October_, 2007.

WINBURN, LEWIS, & STOLZ, LLP

By:_____
James W. Hurt, Jr.
Georgia State Bar No. 380104
Irwin W. Stolz, Jr.
Georgia Bar No.: 683700

279 Meigs Street
Athens, Georgia 30601
Telephone: (706) 353-6585
Facsimile: (706) 354-1785
jhurt@wlsattorneys.com

**Of Counsel:**

CORY, WATSON, CROWDER, & DEGARIS

G. Rick DiGiorgio
Alabama Bar No.: ASB-0289-R72G
Jon C. Conlin
Alabama Bar No.: ASB-7024-J66C

2131 Magnolia Avenue
Birmingham, AL 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896

**Of Counsel:**

LAW OFFICES OF JAMES M. FEAGLE, P.C.

James M. Feagle
Georgia Bar No.: 256916

108 E. Ponce De Leon Avenue
Suite 204
Decatur, GA 30030
Telephone: (404) 373-1970
Facsimile: (404) 601-1855

**Of Counsel:**

LAW OFFICE OF KRIS SKAAR, PC

Kris Skaar
Georgia Bar No.: 649610

P.O. Box 1478
Marietta, GA 30061
Telephone: (770) 427-5600
Facsimile: (770) 427-9414

**Of Counsel:**

LAW OFFICES OF JAY LEWIS, LLC

K. Anderson Nelms
Alabama Bar No.: ASB-6972-E63K

847 S. McDonough Street
Montgomery, AL 36104
Telephone: (334) 263-7733
Facsimile: (334) 832-4390