```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION
```

SHERRY H. CRAFT, individually        *
and as class representative for
all others similarly situated,       *

    Plaintiff,                       *
                                                CASE NO. 3:07-CV-132(CDL)
vs.                                  *

NORTH SEATTLE COMMUNITY COLLEGE      *
FOUNDATION, d/b/a AMERICAN
FINANCIAL SOLUTIONS, *et al.*,       *

    Defendants.                      *

## O R D E R

In this action, Plaintiff alleges that Defendants overcharged her and others for debt adjusting services in violation of Georgia's Debt Adjusting Act, O.C.G.A. §§ 18-5-1 to -4 (2003), O.C.G.A. § 18-5-2 (repealed 2003). Presently pending before the Court are Plaintiff's Motion for a Protective Order (Doc. 47) and Defendant North Seattle Community College Foundation d/b/a/ American Financial Solutions's ("AFS") Motion to Modify Scheduling Order (Doc. 50). For the reasons set forth below, both motions are denied.

## I.  **Plaintiff's Motion for Protective Order**

### A.  Factual Background

Plaintiff alleges that Defendants collected fees from Plaintiff in exchange for their debt adjusting activities on her behalf. (2d Am. Compl. ¶¶ 29-30 [hereinafter Compl.].) Plaintiff contends that between June 2001 and June 2003, Defendants collected those fees in violation of Georgia's Debt Adjusting Act. (*Id.* ¶¶ 35, 42.)

Plaintiff also alleges that after July 1, 2003, Defendants accepted fees from Plaintiff in excess of 7.5 percent of Plaintiff's total monthly payment to Defendants for distribution to Plaintiff's creditors, in violation of the Georgia Debt Adjusting Act. (*Id.* ¶¶ 44-45, 51.)

In October 2008, AFS sent its Georgia Debt Management Plan ("DMP") customers, including Plaintiff, checks to refund "the voluntary contribution amounts received . . . since July 1, 2003 which exceeded 7.5% of each respective current or former customer's monthly disbursements to creditors."  (AFS's Mem. in Opp'n to Pl.'s Mot. for Protective Order 2 [hereinafter AFS Opp'n].)  Each check was accompanied by a letter, which stated:

> Dear Current or Former Credit Counseling Client:
>
> As part of Genus Credit Management's[1] continuing commitment to provide superior service and quality products to its clients, we recently completed a review of your Debt Management Plan account.  As a result of this review, please find enclosed a check payable to you.
>
> Best Regards,
>
> Genus Credit Management.

(*Id.*)  AFS's letter to Plaintiff included a check for $10.46.  The letter did not contain an explanation as to how AFS determined that it owed Plaintiff $10.46.  Plaintiff contends that the letter is an improper communication by AFS.  Plaintiff asks the Court to:

---

[1] AFS purchased Genus Credit Management's DMP portfolio, including Plaintiff's DMP, in June 2001.  (Compl. ¶ 25.)

2

1. Enjoin AFS from contacting potential class members on matters related to this litigation without prior Court approval;
2. Require that any remaining monies AFS contemplates distributing to putative class members be paid into the registry of the Court;
3. Require that AFS provide Plaintiff's counsel and the Court an accounting of how the October 2008 refunds were calculated;
4. Tax monies already distributed to putative class members for attorneys' fees and costs as sanctions for AFS's conduct in sending the letters and purported refunds; and
5. Require that a letter of explanation be sent to all putative class members who received purported refunds from AFS explaining the putative class members' cause of action and any ramifications of accepting the purported refund.

(Pl.'s Mot. for Protective Order 5-6.)

AFS argues that its communications with potential class members were not improper because neither the letters nor the checks referenced this litigation, misrepresented any facts relevant to this litigation, or discouraged potential plaintiffs from participating in this litigation.

### B.   Standard for Limiting Communications to Class Members

Federal Rule of Civil Procedure 23(d) authorizes the Court to regulate communications with potential class members, including communications before class certification. "Because of the potential for abuse, a district court has both the duty and the broad authority

3

to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).[2] However, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. The Court may not restrict communications without a "specific record showing" by Plaintiff of the "particular abuses by which [she] is threatened." *Id.* at 102 (internal quotation marks omitted).

Limitations on communications are appropriate where they are calculated to ensure that class members receive accurate and impartial information regarding the status, purposes and effects of the class action and to prevent coercive communications from the class opponent. *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202-03 (11th Cir. 1985). For example, in *Kleiner*, the defendant, a bank, engaged in a secret scheme to have its employees and officers contact potential class members (bank customers) and ask them to withdraw from the class. Limitations on such communications were appropriate in *Kleiner* because the bank's scheme was "rife with potential for coercion." *Id.* Limitations are not appropriate,

---

[2] In *Gulf Oil*, the Supreme Court found that the district court abused its discretion in adopting a broad order forbidding plaintiffs' counsel from nearly all communication with class members.

however, where the restraint is not justified by a "likelihood of serious abuses." *Gulf Oil Co.*, 452 U.S. at 102-03.

### C. Application of the Standard

Weighing the need for limitation against the potential interference with the rights of the parties in this action, the Court denies Plaintiff's Motion for a Protective Order. In its letters to potential class members, AFS did not make any reference to this lawsuit, did not make a lopsided presentation of the facts, did not explain the basis for the refund (or even call the check a "refund"), and did not elicit a release of any claims. Thus, the Court cannot find that AFS's conduct is such that a protective order is warranted at this time.

This is not to say that AFS now has carte blanche to contact potential class members regarding the matters at issue in this lawsuit; AFS may not now engage in a misleading or coercive campaign to urge its customers who are potential class members to withdraw from the class. The Court simply finds that the communications described in Plaintiff's Motion for a Protective Order do not warrant limitations or corrective action at this time. If the Court issues an order certifying Plaintiff's class, then the Court may consider placing limitations upon AFS's communications with its customers who are class members.

**II.   AFS's Motion to Modify Scheduling Order**

In their proposed scheduling order, which was received by the Court on June 30, 2008 and signed by the Court on July 1, 2008, the parties "agreed that class and merits discovery should be conducted at the same time." (Joint Scheduling Order & Disc. Plan 3.)  The parties also agreed that discovery would expire on January 2, 2009, though they later requested and were granted an extension of discovery through February 16, 2009.  Nonetheless, on November 12, 2008, four and a half months into discovery, AFS decided that it wished to request bifurcated discovery, conducting only class certification discovery during the original discovery period and staying merits-based discovery pending resolution of class certification issues.  AFS asserts that its decision was prompted by the Northern District of Georgia's denial of class certification in a similar case three months earlier, on August 11, 2008.[3]

As of the filing of AFS's Motion to Modify the Scheduling Order, written discovery was partially complete, but AFS contends that "much of the discovery sought by Plaintiff" is irrelevant to the class certification issue and that requiring AFS to respond to Plaintiff's document requests would place "a potentially unnecessary burden" upon AFS.  (AFS's Mot. to Modify Scheduling Order 7.)   AFS could have

---

[3]AFS did not suddenly realize on August 11 that it might have grounds to oppose class certification in this matter.  Rather, it is clear from the proposed scheduling order in this case that when AFS agreed to conduct merits discovery along with class discovery, it recognized that discovery *could be* bifurcated, that Plaintiff would seek class certification in this action and that AFS would oppose it.

6

avoided this issue altogether by not agreeing to conduct merits and class discovery at the same time.

AFS's briefing focuses primarily on the propriety of class certification—a question that is not yet before the Court—but does not succinctly explain what discovery Plaintiff requests that is irrelevant to class certification and is relevant only to the merits of the case. Rather, AFS broadly and vaguely suggests that Plaintiff seeks more discovery than is necessary to determine the class certification issues. Even if that is true, AFS should have been explicit about (1) why it should be allowed to renege on its agreement to conduct class and merits discovery at the same time, (2) precisely which of Plaintiff's requests are irrelevant to class certification because they do not seek information related to the question whether the claims and defenses are susceptible to class-wide proof, and (3) how requiring AFS to respond to those requests at this point in the litigation would create unnecessary expense and burden. AFS did not do so, and the Court sees no reason to modify the scheduling order—to which AFS agreed—to bifurcate discovery.[4] The Court notes that AFS's chief complaint appears to be that Plaintiff propounded too many document requests, in violation of the Court's local rules. The parties should be able to resolve this issue on their own, without intervention from the Court.

---

[4]The Court emphasizes that by pointing out the deficiencies in AFS's motion, the Court is not inviting AFS to file a motion for reconsideration addressing the concerns raised by the Court. Such a motion would only delay discovery unnecessarily and would be met with a summary denial.

The discovery deadline of February 16, 2009 has passed. Therefore, the Court amends the Scheduling Order to extend discovery by sixty days. Discovery shall close on April 20, 2009. Plaintiff's motion for class certification is due by May 18, 2009. Dispositive motions are due by June 2, 2009.

## CONCLUSION

As discussed above, Plaintiff's Motion for a Protective Order (Doc. 47) is denied, and AFS's Motion to Modify Scheduling Order (Doc. 50) is denied. Discovery shall close on April 20, 2009. Plaintiff's motion for class certification is due by May 18, 2009. Dispositive motions are due by June 2, 2009.

IT IS SO ORDERED, this 18th day of February, 2009.

                                      S/Clay D. Land
                                          CLAY D. LAND
                                UNITED STATES DISTRICT JUDGE